**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

**FRANCISCO SOTO,** on behalf of himself and all others similarly situated,

Plaintiff,

-v.-

**UNIVERSAL STANDARD INC.,**

Defendant.

---------------------------------------------------------------------x

Case No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **FRANCISCO SOTO** ("Plaintiff" or "Mr. Soto"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, Robert L. Schonfeld, Esq. of Joseph & Norinsberg LLC, brings this action against **UNIVERSAL STANDARD INC.** ("Universal Standard" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.universalstandard.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Francisco Soto is a resident of New York County and is permanently disabled due to **advanced Wet Age-Related Macular Degeneration ("Wet AMD")**, a degenerative retinal disease that has caused **severe and irreversible central vision loss**. His treating retina specialist at NYU Langone Eye Center confirms that Mr. Soto retains only "bare perception of objects at best," with profound impairment in central acuity, contrast sensitivity, and fine-detail recognition. His condition "meets the clinical criteria for legal blindness," and the vision loss he has sustained

is permanent. Exhibit A

2. As a legally blind individual, **Mr. Soto relies exclusively on screen-reading software and keyboard navigation** to access digital content independently, such as NVDA and JAWS. Because he cannot visually interpret website content, he depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader compatible navigation. For Mr. Soto, accessible coding is not optional—it is the only means by which he can access the internet.

3. In 2026, Mr. Soto sought to independently browse and purchase clothing for his partner, a woman who wears a plus-size. Universal Standard is uniquely distinguished in the marketplace for its extraordinary size range—sizing from 00 to 40—and its reputation for engineering garments that fit true to size at every point on the spectrum, including sizes that most major fashion retailers simply do not carry. Mr. Soto specifically sought out Universal Standard's **Dune Linen Shirtdress** and **Cabana Linen Kaftan**, both of which appear as featured bestsellers on Defendant's website, and which were uniquely suited to his partner's size and preferences. No comparable retailer offers the same extraordinary breadth of inclusive sizing with the same level of fabric craftsmanship, and Mr. Soto chose universalstandard.com specifically because it was the only online source that could reliably serve his partner's needs.

4. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5. The internet has become an indispensable tool for modern life. It is a primary means of

shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against Universal Standard Inc., the operator of **www.universalstandard.com**, for its failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III

of the ADA.

9. On **March 3, 2026**, **March 4, 2026**, **April 14, 2026**, and **May 9, 2026**, Plaintiff attempted to access Defendant's Website using screen-reader technology to research and purchase the **Dune Linen Shirtdress** and **Cabana Linen Kaftan**. He attempted to review product descriptions, available sizes, color options, pricing, and shipping information before completing a purchase.

10. Despite multiple attempts across these four dates, Plaintiff was unable to independently complete his objectives due to pervasive access barriers. Automated WAVE audits conducted on **May 9, 2026**, of the exact pages Plaintiff attempted to access revealed **111 Errors** on the Seasonal Dresses page and **103 Errors** on the Dresses, Jumpsuits & Best Sellers page—pages on which both target products are prominently featured—including missing alternative text, missing form labels, empty buttons, and 106 and 98 empty links respectively. These technical defects manifested in concrete barriers for Plaintiff: product images were announced without meaningful alternative text, depriving him of information about style or color; filter controls were unlabeled, preventing independent navigation of the product grid; and empty buttons and unlabeled interactive elements caused NVDA's focus to jump unpredictably, preventing Plaintiff from understanding how to select sizes, add items to a cart, or complete a purchase. Exhibit B

11. The accessibility barriers were systemic and not limited to isolated pages. The Seasonal Dresses audit identified **111 Errors and 896 Alerts**, while the Dresses, Jumpsuits & Best Sellers audit identified **103 Errors and 920 Alerts**. Both pages received an AIM Accessibility Score of only **3.4 out of 10**. These findings confirm that Defendant's Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered.

12. In addition to the WAVE findings, Plaintiff conducted an automated SortSite accessibility audit of Universal Standard's Website. The SortSite scan identified **6 Level A violations across 32 pages**, including: links using only text color change to distinguish them (rendering them invisible to blind and color-impaired users on **29 pages**); links without any accessible name whatsoever (on **6 pages**); input elements nested as descendants of elements with role=button—a coding structure that causes screen readers to misfire—on **9 product pages**; visual labels not appearing in the accessible name of interactive controls (on the homepage); and the use of CSS styling to simulate headings rather than proper HTML heading elements (on the Our Story pages). In addition, the SortSite broken link report identified **1,178 pages** returning HTTP 429 "Too Many Requests" errors across virtually every collection and product category on the entire site. These findings confirm that the accessibility barriers Plaintiff encountered are **systemic**, **site-wide**, and **inherent to Universal Standard's design and coding practices**, rendering the Website incompatible with screen-reader technology and WCAG 2.1 AA standards. Exhibit C

13. Defendant operates a retail ecommerce platform through which consumers can browse clothing, review product-specific information, select sizes and colors, and purchase items directly online. Plaintiff specifically sought out Defendant because of its industry-unique sizing range—from size 00 through size 40—and its focus on fit-engineered fashion. Defendant's brand mission, as stated on its own website, is to be "the world's most inclusive fashion brand." No other retailer offers comparable size inclusivity for the specific products Plaintiff sought. This is precisely why Mr. Soto chose **www.universalstandard.com** over other online retailers: the unique breadth of Defendant's size offerings and the quality of its fashion-forward linen and specialty fabrications are not replicable elsewhere.

14. Upon information and belief, Defendant had prior notice of its website accessibility

failures and, notwithstanding such notice, has failed to meaningfully remediate its Website. Most significantly, Defendant was sued at least twice in federal court for the precise category of violations alleged herein. In *Crosson v. Universal Standard Inc.*, No. 1:20-cv-02720 (E.D.N.Y. June 19, 2020), a plaintiff with visual disabilities brought a Title III ADA action against Defendant alleging that www.universalstandard.com was inaccessible to screen-reader users. That action was voluntarily dismissed with prejudice on September 14, 2020, and, upon information and belief, was resolved by private settlement in which Defendant agreed to remediate the accessibility barriers on its Website. Thereafter, in *Stroude v. Universal Standard, Inc.*, No. 1:23-cv-09350 (E.D.N.Y. Dec. 19, 2023), a second plaintiff brought an identical Title III ADA action against Defendant alleging the continued inaccessibility of www.universalstandard.com to persons with visual disabilities. That action was dismissed pursuant to a Stipulation of Dismissal on July 17, 2024, and, upon information and belief, was again resolved by private settlement in which Defendant agreed to undertake ADA-compliant remediation of its Website. Notwithstanding these two prior federal court actions and the remediation commitments Defendant is believed to have made in connection therewith, the audits conducted by Plaintiff's counsel in 2026 demonstrate, as set forth herein, that **Defendant has done nothing positive to bring its Website into compliance**. The same systemic, WCAG-violating barriers that existed before any prior notice remain fully intact today. This pattern of receiving notice, making promises of remediation, and failing to act demonstrates a willful and deliberate disregard of Defendant’s obligations under federal, state, and local law.

15. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that **www.universalstandard.com** becomes and remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other

blind consumers remain excluded from equal participation in Defendant's online marketplace.

## JURISDICTION & VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

17. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

18. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in New York County, accessed Defendant's Website, www.universalstandard.com, from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. *See Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); *see also Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

19. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce Website, **www.universalstandard.com**, which allows users to browse inventory, review product information, select size and color options, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail

themselves of the privilege of conducting business here. *See Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

20. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

21. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## <u>THE PARTIES</u>

22. Plaintiff **Francisco Soto** is, and at all relevant times was, a resident of **New York County, New York**. Mr. Soto is **legally blind** and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, and the protections afforded under New York State and New York City law. As confirmed by his treating retina specialist at NYU Langone Eye Center, Mr. Soto suffers from **advanced Wet Age-Related Macular Degeneration**, a permanent degenerative retinal condition that causes severe central vision loss, profound impairment in contrast sensitivity, and drastically reduced visual acuity. His condition meets the clinical criteria for legal blindness and requires the use of **screen-reading software** to access digital content independently.

23. Plaintiff is a proficient user of screen-reader technology, including **NVDA**, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Soto depends on businesses to design, construct, and maintain their websites in a manner that

is compatible with screen-reading software.

24. For Mr. Soto, accessible online shopping is essential to his independence and to his ability to care for the needs of his family. As a legally blind consumer, he cannot visually browse retail stores or product displays without assistance. He therefore relies heavily on accessible ecommerce websites to research, evaluate, and purchase products for himself and his household—including clothing gifts for his partner. Defendant's platform was uniquely positioned to serve those needs given its unparalleled size range and inclusive fashion offerings. When websites lack proper alternative text, labeled controls, or navigable structure, Mr. Soto is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

25. Upon information and belief, **Universal Standard Inc.** is a corporation organized under the laws of a state other than New York, with its principal place of business located outside New York State. Defendant owns, operates, and controls the commercial retail ecommerce Website **www.universalstandard.com** (the "Website"), through which it markets, displays, and sells women's clothing—including dresses, jumpsuits, tops, bottoms, denim, workwear, athleisure, loungewear, and related fashion items—to consumers throughout the United States, including residents of New York. Defendant brands itself as "the world's most inclusive fashion brand" and offers sizes ranging from 00 through 40. Defendant derives substantial revenue from interstate commerce and transacts business within this District by offering its products for direct online purchase and shipment to New York consumers.

## STATEMENT OF FACTS

### Plaintiff's Attempts to Access Defendant's Website

26. On **March 3, 2026**, **March 4, 2026**, **April 14, 2026**, and **May 9, 2026**, Plaintiff **Francisco Soto** attempted on four separate occasions to access Defendant's retail ecommerce

Website, **www.universalstandard.com**, using the NVDA screen reader on his home computer in New York County. Plaintiff visited the Website for the specific purpose of browsing and purchasing clothing for his partner, who wears a plus-size that is uniquely available through Defendant's extraordinary size-inclusive range.

27. Plaintiff specifically sought to research and purchase two products: (1) the **Dune Linen Shirtdress** (available in Black and multiple colorways, priced at $158–$178), and (2) the **Cabana Linen Kaftan** (available in Black, Acai, Yellow Confetti Print, and Shoreline Sunset, priced at $188–$208). Both products are prominently displayed as featured items on Defendant's Seasonal Dresses and Dresses, Jumpsuits & Best Sellers collection pages, which were the pages directly audited by WAVE. Mr. Soto chose these specific items because of their high-quality linen construction, their availability in his partner's size, and their versatility as gifts. He chose **www.universalstandard.com** over all other online clothing retailers because no other retailer offers a comparable combination of size inclusivity (00 through 40), premium fabric quality, and the specific styles he sought. Defendant's own brand mission—"the world's most inclusive fashion brand"—reflects the unique market position that drew Plaintiff specifically to this Website.

28. Plaintiff attempted to review product names, descriptions, available sizes, colorway options, pricing, and shipping information. He also attempted to use the Website's filter and sort controls to navigate the product collections and identify the specific items he desired. However, the WAVE report for the **Seasonal Dresses** page identified **111 Errors**, including 1 missing alternative text, 1 missing form label, 3 empty buttons, and **106 empty links**. These technical defects manifested in concrete barriers for Plaintiff:

> Product images for the Dune Linen Shirtdress, the Cabana Linen Kaftan, and dozens of other items were announced only as empty links with no meaningful alternative text, depriving Plaintiff of any information about the garment's style, color, silhouette, or fabric.

Filter controls and form elements were missing form labels, causing NVDA to announce them inconsistently or as unlabeled form fields, preventing Plaintiff from independently narrowing his search by size or color.

106 empty links—the most common error category—caused NVDA to repeatedly announce "blank," "link," or nothing at all, making it impossible to determine how many products were available, what each product was, or how to select any item for further review.

Empty buttons lacking any accessible label caused NVDA's focus to jump unpredictably, preventing Plaintiff from understanding how to add items to his cart or interact with "Quick Add" controls prominently featured on each product card.

Broken ARIA attributes (aria-disabled="FALSE" and aria-disabled="-1" appearing on swatch selectors throughout the page) caused NVDA to misreport the state of interactive controls, generating confusion as to which size and color options were available.

Because of these barriers, Plaintiff could not reliably navigate the Seasonal Dresses collection, could not identify which products were the Dune Linen Shirtdress or Cabana Linen Kaftan, and could not add any item to his cart or proceed toward purchase.

29. Plaintiff also attempted to access the **Dresses, Jumpsuits & Best Sellers** page—another featured collection page on which both target products appeared—and encountered the same systemic barriers. The WAVE report for this page identified **103 Errors**, including 1 missing alternative text, 1 missing form label, 3 empty buttons, and **98 empty links**. The AIM Accessibility Score for this page was also only **3.4 out of 10**. Among the specific additional barriers Plaintiff encountered on this page:

- NVDA announced interactive product cards as "blank," "link," or "button" without context, making it impossible to distinguish between the Dune Linen Shirtdress, the Cabana Linen Kaftan, and the dozens of other products displayed.
- Missing alternative text on product images prevented Plaintiff from identifying any garment by its visual attributes, including the color, print, or silhouette of the specific items he sought.
- Improper aria-disabled attributes and broken ARIA references caused NVDA to skip or misreport sections, rendering the size-selection controls for each product completely inaccessible.

- 920 Alerts on the page—including 23 instances of a nearby image having the same alternative text and 66 instances of long alternative text—further degraded the usability of the page for screen-reader users by causing redundant and confusing audio output.

30. On each of the four dates, Plaintiff attempted in good faith to identify the **Dune Linen Shirtdress** and **Cabana Linen Kaftan**, evaluate available sizes and colors, and complete a purchase for his partner. Because the Website lacked accessible coding, Plaintiff was entirely unable to obtain the same information available to sighted users and could not complete a purchase on any of the four occasions he attempted.

**Background and Reliability of SortSite**

31. SortSite is a professional-grade website accessibility and quality testing tool developed by PowerMapper Software. It is widely used by web developers, accessibility consultants, government agencies, and legal practitioners to audit websites for compliance with WCAG, Section 508, and other internationally recognized accessibility standards. SortSite performs automated multi-page scanning of entire websites, checking for violations at WCAG 2.1 Levels A, AA, and AAA. It is recognized across the accessibility community for its accuracy and breadth of coverage. SortSite's results are routinely relied upon by federal agencies, law firms, and accessibility practitioners as objective, reproducible evidence of a website's compliance posture. Notably, SortSite reports both the specific WCAG success criterion violated and the exact HTML line numbers on which violations occur, providing a level of technical specificity that further enhances the reliability and probative value of its findings.

**Systemic Barriers Confirmed by WAVE**

32. The WAVE reports confirm that the barriers Plaintiff encountered were not isolated to a single page but were systemic across the Website. The Seasonal Dresses report identified **111 Errors and 896 Alerts**, and the Dresses, Jumpsuits & Best Sellers report identified **103 Errors and 920 Alerts**. Both pages received an AIM Accessibility Score of only **3.4 out of 10**. These findings demonstrate that Defendant's Website is not designed, constructed, maintained, or operated in a manner compatible with screen-reader technology.

33. The combination of missing alternative text, unlabeled form controls, broken ARIA references, empty buttons, empty links, improper aria-disabled attributes, and redundant alternative text prevents blind users from perceiving, navigating, and interacting with the Website on equal terms with sighted users. The pervasiveness of these errors—with a combined total of **214 Errors and 1,816 Alerts** across just two audited pages—reflects design and coding practices that are fundamentally incompatible with screen-reader accessibility.

**Systemic Barriers Confirmed by SortSite**

34. In addition to the WAVE findings, Plaintiff conducted an automated SortSite accessibility audit of Universal Standard's Website. The SortSite scan identified **6 Level A violations across 32 pages**, including:

- **Links using only text color change** (WCAG 2.1 A F73 / Section 508 A F73) — affecting **29 pages**, including collections/athleisure, collections/bras, collections/courtside-ticket, collections/fashion-blazers, collections/final-few, collections/intimates, collections/jackets, collections/outerwear-best-sellers, collections/overstock-sale, and product pages including the Thames Fog Dress and Thames Mesh Pants. This violation renders hyperlinks invisible to blind users who rely on structural cues to identify links because text color alone—without underline or other non-color visual indicator—cannot be detected by a screen reader's structural parsing.
- **Links with non-descriptive text ("Learn More")** (WCAG 2.1 A F63 / Section 508 A F63) — on the homepage at Line 12183. The link text "Learn More" provides no information about the link's destination or purpose, forcing a screen-reader user to navigate without context.
- **Links without any accessible name** (WCAG 2.1 A F89 / Section 508 A F89) — affecting **6 pages**, including the homepage, collections/courtside-ticket, collections/final-few, collections/overstock-sale, and pages/our-story. Empty links with no accessible name are announced by NVDA simply as "link," rendering them completely meaningless to a blind user.
- **Input elements nested inside elements with role=button** (WCAG 2.1 A 4.1.2 / Section 508 A 4.1.2) — affecting **9 product pages**, including products for the Ella High Rise Straight Leg Jeans, Lou High Rise Barrel Leg Jeans, Luxe Cotton Gauze Beach Dress, Luxe Cotton Gauze Beach Shirt, Seine High Rise Skinny Jeans (Jet Black and True Blue), Thames Fog Dress, and Thames Mesh Pants. This structural defect causes screen readers to fail to properly expose interactive controls (such as size-selection inputs) to blind users, preventing them from selecting sizes or adding products to a cart.

- **Visual label not appearing in the accessible name of controls** (WCAG 2.1 A F96 / Section 508 A F96) — on the homepage, with labels such as "Lou High Rise Barrel Leg Jeans NEW! $158" and "Ella High Rise Straight Leg Jeans $138" not matching the accessible names announced by screen readers, causing NVDA to announce product names that do not correspond to what is visually displayed.
- **CSS heading styles applied to non-heading elements** (WCAG 2.1 A F2 / Section 508 A F2) — on pages/our-story and pages/our-story?view=about-us. This violation deprives blind users of the ability to use heading navigation—a primary screen-reader navigation strategy—to efficiently move through the page's content.

35. The SortSite scan also identified **1 Level AA violation** (insufficient text/background color contrast, WCAG 2.1 AA 1.4.3 / Section 508 AA 1.4.3) on **6 pages**, further impairing the ability of low-vision users to perceive text content on the Website.

36. The SortSite Broken Link Report identified **1,178 pages** of Defendant's Website returning HTTP 429 "Too Many Requests" errors—meaning that Defendant's server configuration actively blocks automated scanning and systematically impedes the accessibility testing tools on which blind users' advocates rely to document barriers. This server-side configuration failure is itself a manifestation of Defendant's systemic disregard for accessibility: the breadth of the 429-error coverage confirms that virtually every collection and product page across the Website—including collections/seasonal-dresses and collections/dresses-jumpsuits-best-sellers, the exact pages Plaintiff accessed—suffers from deficient server infrastructure that further complicates and compounds the accessibility barriers already documented.

**Plaintiff's Concrete Injury and Intent to Return**

37. Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendant's Website for the specific purpose of purchasing clothing for his partner. His shopping objectives were personal, particular, and tied to specific products he attempted to review.

38. Plaintiff remains highly interested in purchasing the **Dune Linen Shirtdress** and **Cabana Linen Kaftan** from Defendant and intends to return to the Website as soon as it is made accessible. His intent to return is credible because:

- He continues to desire these specific products—particularly because no other retailer offers the same size range and design quality as Defendant.
- Defendant offers sizes (including larger plus-sizes above size 26) that are not available for these styles from any other comparable online fashion retailer.
- He has no alternative means of independently evaluating these products or completing a purchase without an accessible Website.
- He has demonstrated a history of attempting to access the Website on four separate dates for the purpose of making a purchase.

39. Defendant's ongoing operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff's injury is ongoing because Defendant has no policy or plan to ensure accessibility, and the barriers he encountered remain uncorrected.

40. Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access **www.universalstandard.com** and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

42. Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York who have attempted to access **www.universalstandard.com** and were denied equal access to the goods, services, and information offered thereon.

43. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its inclusive fashion products to consumers throughout the United States. Upon information and belief, **thousands of blind and visually impaired individuals** have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by WAVE and SortSite audits.

44. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

45. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screen-reading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the WAVE and SortSite reports.

46. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

47. Defendant has acted or refused to act on grounds generally applicable to the Class and

Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

48. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

## FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

49. Plaintiff **Francisco Soto**, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

50. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

51. Defendant's Website, **www.universalstandard.com**, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

52. Defendant has failed to design, construct, maintain, and operate its Website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

53. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

54. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)–(iii).

55. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, **www.universalstandard.com**, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

56. Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. As set forth in paragraph 14 herein, Defendant was twice sued in federal court—in 2020 and again in 2023—for the same category of ADA website accessibility violations alleged in this Complaint, and, upon information and belief, entered into private settlements on both occasions in which it agreed to remediate the accessibility barriers on

its Website. Despite these prior proceedings and settlement commitments, **Defendant has failed to implement WCAG-compliant remediation and has done nothing positive to bring its Website into compliance**, as demonstrated by the 2026 WAVE and SortSite audits described herein. Defendant's continued operation of an inaccessible website in the face of repeated federal litigation and remediation commitments constitutes a willful and knowing violation of Title III of the ADA.

57. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**<u>SECOND CAUSE OF ACTION</u>**
**(New York State Human Rights Law)**
**("NYSHRL")**

58. Plaintiff, **Francisco Soto,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

60. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

61. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, **www.universalstandard.com**, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article

15 of N.Y. Executive Law § 292(1).

62. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

63. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

64. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

65. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a Website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make the accessibility features of the Website known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full and equal access to the facilities, goods, and services that Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

66. The Defendant's discriminatory practice also includes "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

67. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

68. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

69. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

70. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## **THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

71. Plaintiff, **Francisco Soto,** on behalf of himself and the New York City Subclass

Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

73. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

74. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

75. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

76. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, **www.universalstandard.com**, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

77. Defendant intentionally and willfully failed to remove the barriers on its Website,

discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

78. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

79. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*...

80. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

81. Plaintiff, **Francisco Soto,** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

82. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's … disability … directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

83. Defendant is subject to NYCHRL because it owns and operates the Website,

**www.universalstandard.com**, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

84. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

85. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities … any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

86. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

87. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

88. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations

and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

89. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

90. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

91. Plaintiff is also entitled to reasonable attorneys' fees and costs.

92. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

93. Plaintiff, Francisco Soto, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

94. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that their Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

95. A judicial declaration is necessary and appropriate at this time so that each of the

parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 *et seq.*;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make **www.universalstandard.com**, fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its Website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 4, 2026

Respectfully submitted,
/s/ Robert Schonfeld
**Robert Schonfeld, Esq.**
Joseph & Norinsberg, LLC
825 Thid Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
*Attorneys for Plaintiff and the Class*